UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE STANLEY WORKS ISRAEL LTD. f/k/a ZAG INDUSTRIES, LTD.<br><br>Plaintiff,<br>v.<br><br>500 GROUP, INC. and PAOLO TIRAMANI<br>Defendants. | Civil Action No. 3:17-cv-01765-CSH<br><br>JURY TRIAL DEMANDED<br><br>FEBRUARY 13, 2018 |

## AMENDED COMPLAINT

The plaintiff, The Stanley Works Israel Ltd. f/k/a ZAG Industries, Ltd. ("Stanley Israel"), for its amended complaint against 500 Group, Inc. ("500 Group") and Paolo Tiramani ("Tiramani"), alleges as follows:

## THE PARTIES

1. Stanley Israel is an Israeli limited liability company with its principal place of business in Rosh Ha'Ayin, Israel. Stanley Israel is wholly owned by Stanley Israel Investments B.V., a Dutch limited liability company with its principal place of business in the Netherlands. Stanley Israel Investments B.V. is wholly owned by Stanley Black & Decker Canada Corporation, a Canadian corporation with its principal place of business in Canada.

2. 500 Group is a New York corporation with its principal place of business at 400 S. 4th Street, Las Vegas, Nevada. 500 Group also has a regular and established place of business at 500 W. Putnam Avenue, Suite 400, Greenwich, Connecticut.

3. Tiramani is a citizen of the State of Nevada and has a place of business at 400 S. 4th Street, Las Vegas, Nevada. Tiramani previously resided in Greenwich, Connecticut and maintains a place of business in Greenwich, Connecticut.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this civil action under 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over 500 Group and Tiramani because, *inter alia*, (a) 500 Group and Tiramani transact business in this state and the cause of action pled in this Complaint arises out of such business, (b) the cause of action pled in this Complaint arises out of a contract made or to be performed in this State, and (c) 500 Group and Tiramani committed tortious acts within this state and the cause of action pled in this Complaint arises out of such tortious acts.

6. Venue is proper under 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to this claim occurred in this district. Additionally, a substantial part of the property that is the subject of this action is situated in this district.

## FACTUAL BACKGROUND

7. 500 Group and Stanley Israel were parties to a certain Product License Agreement dated May 14, 1997, a certain Product License Agreement dated February 27, 2004, and a certain Letter Agreement dated January 10, 2007 (collectively, "the License Agreements"). The License Agreements related generally to patent rights owned by 500 Group.

8. The License Agreements did not contain provisions relating to the tax treatment of royalty payments made under their terms. Under Israeli law, Stanley Israel was required to withhold certain percentages of the royalty payments to 500 Group and to remit that amount to

the Israeli tax authority to satisfy 500 Group's tax obligations in Israel. Therefore, Stanley Israel made appropriate withholdings from the royalty payments to 500 Group and remitted the tax to the Israeli tax authority during the term of the License Agreements. 500 Group consented and agreed to this process for satisfying 500 Group's tax obligations in Israel for royalty payments.

9. Various disputes arose between 500 Group and Stanley Israel relating to the License Agreements, which resulted in a demand for arbitration, and for which Stanley Israel denied all liability.

10. 500 Group and Stanley Israel negotiated their disputes under the License Agreements, including in Connecticut, and ultimately reached a settlement.

11. 500 Group and Stanley Israel entered into an Agreement and Mutual Release with an effective date of March 31, 2017 ("the Settlement Agreement"). The Settlement Agreement was signed by Tiramani on behalf of 500 Group. A copy of the Settlement Agreement is appended hereto as <u>Exhibit A</u>.

12. The Settlement Agreement provided that Stanley Israel was to pay 500 Group the sum of ten million U.S. dollars. Of this total, the parties agreed that six million dollars constituted payment for Stanley Israel's purchase of 500 Group's patent rights and that the remaining four million dollars constituted royalty payments to 500 Group.

13. As with the License Agreements, Stanley Israel was required to withhold any portion of the payment amount that is taxable under Israeli law and to remit the tax to the Israeli tax authority on behalf of 500 Group.

14. If the parties did not obtain pre-approval for some other withholding arrangement on the Settlement Agreement from the Israeli tax authority, Stanley Israel was required to withhold 25% of the total payment amount, i.e., $2,500,000 in this case. 500 Group would then

be required to seek return of that portion of the withholding that is not properly taxable from the Israeli tax authority.

15. Instead, the parties agreed in mutually-signed electronic writings to delay payment of the amount due on the Settlement Agreement so that the parties could obtain pre-approval for structuring a reduced amount of withholding, in view of the agreed-upon structure of the Settlement Agreement. The parties contended that, under Israeli law, the six-million-dollar payment for 500 Group's patent rights should not be taxed, and the four-million-dollar payment for royalties should be taxed at the rate of 15%, as it had been under the License Agreements. Therefore, if pre-approval was obtained, 500 Group's total tax burden would be $600,000, which, according to signed electronic agreements between the parties, would be withheld by Stanley Israel and remitted to the Israeli tax authority.

16. 500 Group agreed in signed electronic writings that the parties would seek preapproval from the Israeli tax authority so that only 15% of the royalty payment (i.e., $600,000) would need to be withheld by Stanley Israel and remitted to the Israeli tax authority.

17. 500 Group hired Ernst & Young to act on its behalf to assist in obtaining pre-approval for this arrangement from the Israeli tax authority. An agent of 500 Group, Natasha Streitz, engaged Ernst & Young in writing on or about April 26, 2017, with a copy to Tiramani.

18. Tiramani and other agents of 500 Group confirmed the parties' agreement relating to the tax withholdings multiple times in writing, such as in emails signed by Tiramani and other agents of 500 Group.

19. For example, an agent of 500 Group, Hamid Firooznia, wrote in a signed email that "[a]s soon as we were informed that 500 Group should obtain a preapproval from [the Israeli] tax authority, 500 Group immediately asked E&Y to act on its behalf and obtain the

necessary approval. 500 Group has been Pushing as hard as it can to get the approval from the moment you informed us."

20. Tiramani also personally set up conference calls, confirmed through signed emails, with Ernst & Young and Stanley Israel to further the parties' agreement regarding the tax withholdings. At first, Tiramani proposed the idea of splitting-up and re-executing the Settlement Agreement to separate the payment for the patent rights and the payment for the royalties. Stanley Israel, however, proposed that the parties continue to seek preapproval for the tax withholdings under the Settlement Agreement as originally executed. In a signed electronic writing on behalf of 500 Group, Tiramani agreed to this proposal and instructed 500 Group's agents at Ernst & Young to seek withholding preapproval from the Israeli tax authority on these terms, as agreed upon by the parties.

21. Ultimately, Ernst & Young, acting on behalf of 500 Group, obtained written pre-approval for withholding only 15% of the royalty payment (i.e., $600,000) of the Settlement Agreement amount and 0% of the patent-rights payment of the Settlement Agreement. 500 Group agreed that Stanley Israel was to retain $600,000 from the payment total under the Settlement Agreement to fulfill 500 Group's tax obligations and its pre-approval arrangements with the Israeli tax authority.

22. Thus, the parties' agreement to seek preapproval for and proceed with withholding 15% of the royalty payment (i.e., $600,000) of the Settlement Agreement was acted on to completion, including with respect to 500 Group's obligation to deal with the Israeli tax authority through Ernst & Young. Additionally, 500 Group's agreements, representations, and conduct regarding the tax withholding induced Stanley Israel's reliance (a) in that Stanley Israel aided 500 Group in its efforts to obtain preapproval from the Israeli tax authority and (b) in that

Stanley Israel performed its obligations under the parties' agreement by remitting $600,000 to the Israeli tax authority in satisfaction of 500 Group's tax obligations.

23.     Under the Settlement Agreement, 500 Group was to give Stanley Israel bank-wire instructions for the payments.

24.     500 Group instructed Stanley Israel that the payment was to be wired to its account at Patriot Bank in Stamford, Connecticut.

25.     On or about June 1, 2017, Stanley Israel wired the settlement funds to 500 Group's Patriot Bank account in Stamford, Connecticut. However, Stanley Israel mistakenly failed to deduct $600,000 from the total as the agreed-upon tax withholdings. Therefore, Stanley Israel also accidentally overpaid 500 Group by $600,000 ("the $600,000").

26.     On or about June 5, 2017, Stanley Israel had its bank request a recall of the funds transmitted in error, which request was denied.

27.     On or about June 7, 2017, Stanley Israel explained to 500 Group that it had mistakenly overpaid it by $600,000 and asked 500 Group to return the money.

28.     500 Group failed to diligently respond to Stanley Israel's request.

29.     Stanley Israel made multiple follow-up requests for return of the $600,000 to 500 Group and to Tiramani.

30.     Tiramani initially indicated, in a signed electronic writing, an intention to return the $600,000 and inquired regarding the logistics of the return. However, even after Stanley Israel answered Tiramani's logistical inquiry and reached agreement on how the money should be returned, all of Stanley Israel's requests and follow-ups were either ignored or refused without legal explanation by 500 Group and Tiramani.

31.     Since Stanley Israel is liable to the Israeli tax authority for the full amount of the pre-approved withholdings under the Settlement Agreement, Stanley Israel paid $600,000 to the Israeli tax authority on or about August 15, 2017.

32.     500 Group and Tiramani continue to refuse to return Stanley Israel's $600,000 despite continued and repeated requests and demands.

## FIRST COUNT: BREACH OF CONTRACT (AGAINST 500 GROUP)

33.     The above paragraphs 1 through 32 are hereby incorporated by reference as if fully set forth herein.

34.     Stanley Israel and 500 Group entered into a valid and enforceable contract whereby Stanley Israel would be allowed to withhold $600,000 of the royalty payment under the Settlement Agreement so that this amount could be remitted to the Israeli tax authority in satisfaction of 500 Group's tax obligations in Israel.

35.     Stanley Israel fully performed under the Settlement Agreement and the parties' agreements and understandings by paying $9,400,000 to 500 Group, aiding 500 Group in obtaining preapproval for $600,000 in tax withholdings from the Israeli tax authority, and remitting $600,000 to the Israeli tax authority.

36.     500 Group breached the parties' contract and breached the implied covenant of good faith and fair dealing (a) by refusing to return Stanley Israel's accidental overpayment of the $600,000, (b) by retaining the $600,000 despite Stanley Israel's demands for return, (c) by thereby refusing to allow Stanley Israel to withhold $600,000 of the royalty payment under the Settlement Agreement, and (d) by thereby refusing to allow Stanley Israel to remit $600,000 from the Settlement Agreement to the Israeli tax authority.

37.     500 Group's breach of the parties' agreement has caused Stanley Israel damages.

## SECOND COUNT: UNJUST ENRICHMENT (AGAINST 500 GROUP)

38. The above paragraphs 1 through 32 are hereby incorporated by reference as if fully set forth herein.

39. Stanley Israel overpaid 500 Group by $600,000, thereby enriching and benefitting 500 Group at Stanley Israel's expense.

40. Stanley Israel sent the $600,000 to 500 Group accidentally, and 500 Group was not entitled to the $600,000 under the parties' agreements and understandings.

41. 500 Group unjustly did not pay Stanley Israel for the $600,000, which was to Stanley Israel's detriment. Stanley Israel also paid $600,000 to the Israeli tax authority in satisfaction of 500 Group's tax obligations

42. It is against equity and good conscience to permit 500 Group to retain the $600,000.

43. 500 Group's unjust enrichment has caused Stanley Israel damages.

## THIRD COUNT: UNFAIR TRADE PRACTICES
## (AGAINST 500 GROUP AND TIRAMANI)

44. The above paragraphs 1 through 43 are hereby incorporated by reference as if fully set forth herein.

45. 500 Group's unfair retention of and refusal to return the $600,000, which was sent to and located in Connecticut, was a product of unfair and deceptive conduct involving malice, bad faith, and/or violations public policy conceptions of fairness.  500 Group's unfair trade practices in this regard were participated in and committed, authorized, and directed by Tiramani.

46. Tiramani is the "founder" and president of 500 Group and has effective control over all of its actions as a closely held corporation.

47. Many of Stanley Israel's requests for the return of the $600,000 overpayment were made directly to Tiramani.

48. In one such request, Stanley Israel's agent indicated that she was shocked that Tiramani would ignore Stanley Israel's requests.

49. However, Tiramani holds a malicious grudge against Stanley Israel arising out of the nearly decade-long dispute with Stanley Israel under the License Agreements, which grudge is evidenced in Tiramani's written communications with Stanley Israel regarding the $600,000.

50. Tiramani and 500 Group know that they are not entitled to retain the $600,000 overpayment sent to 500 Group's Connecticut bank account at Patriot Bank. Tiramani and 500 Group knew about and agreed to the tax withholding obligations and preapproval process under Israeli law. Tiramani and 500 Group knew that they had agreed to and arranged for the withholding of the $600,000. In all of Stanley Israel's correspondence with Tiramani and 500 Group, no legal or rational explanation has been given for their retention of the $600,000. In fact, Tiramani initially expressed an intention to return the $600,000 and reached an agreement with Stanley Israel regarding the logistics of the return of the money, before he stopped responding to Stanley Israel's requests and resolved to attempt to illegally retain the $600,000 without justification.

51. Tiramani and 500 Group have retained the $600,000 overpayment in Connecticut out of malice and in bad faith and for the sole purpose of unlawfully harming Stanley Israel.

52. The foregoing conduct by 500 Group and Tiramani constitutes unfair acts or practices in the conduct of their respective trades or commerce. The conduct arose from the defendants' primary line of business, including the receipt of royalty payments and the monetization of intellectual property rights. 500 Group claims that it is an "intellectual property,

9

product development, and investment company." 500 Group also touted the Settlement Agreement in a press release as a significant achievement in 500 Group's business model.

53. Stanley Israel has suffered an ascertainable loss of money as a result of the use or employment of the defendants' unfair trade practices.

54. Tiramani and 500 Group engaged in the foregoing unfair trade practices in a knowing, willful, wanton, and/or recklessly indifferent manner.

55. Tiramani and 500 Group's conduct as alleged hereby constitutes unfair trade practices within the meaning of Connecticut General Statutes 42-110a, *et seq.*

## FOURTH COUNT: CONVERSION
## (AGAINST 500 GROUP AND TIRAMANI)

56. The above paragraphs 1 through 55 are hereby incorporated by reference as if fully set forth herein.

57. The $600,000 that Stanley Israel accidentally overpaid to 500 Group, and which was sent to and located in Connecticut, belongs to Stanley Israel. Stanley Israel has a superior legal right to the $600,000 than 500 Group.

58. 500 Group, under Tiramani's authorization, direction, and control, has unlawfully detained and refused to return the $600,000 from Stanley Israel, despite Stanley Israel's many demands for return.

59. These actions by 500 Group and Tiramani were without authorization from Stanley Israel.

60. The conversion of Stanley Israel's property by 500 Group and Tiramani in Connecticut has caused Stanley Israel damages and additionally entitles Stanley Israel to the imposition of a constructive trust.

## FIFTH COUNT: CIVIL THEFT
## (AGAINST 500 GROUP AND TIRAMANI)

61. The above paragraphs 1 through 60 are hereby incorporated by reference as if fully set forth herein.

62. Using their Patriot Bank account in Connecticut, 500 Group and Tiramani came into control of the $600,000, belonging to Stanley Israel, knowing that it was delivered under a mistake as to the amount of the money being transferred.

63. Acting with a purpose to deprive Stanley Israel of the $600,000, 500 Group and Tiramani have failed to take reasonable measures to restore the $600,000, which was sent to and located in Connecticut, to Stanley Israel, despite Stanley Israel's many requests and demands for return.

64. In Connecticut, 500 Group and Tiramani have acted with intent to deprive Stanley Israel of the $600,000 and to appropriate it for themselves or a third person and have wrongfully withheld the $600,000 from its owner, Stanley Israel.

65. These actions by 500 Group and Tiramani related to money sent to and located in Connecticut constitute larceny and/or larceny by acquiring property lost, mislaid or delivered by mistake under Connecticut General Statutes §§ 53a-119 and/or 53a-119(4).

66. As a result of these illegal acts by 500 Group and Tiramani, Stanley Israel has been damaged in the amount of $600,000 and is entitled to treble damages pursuant to Connecticut General Statutes § 52-564.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Stanley Israel seeks relief including:

1. Monetary damages;

2. Post-judgment interest;

3. Pre-judgment interest;

4. Costs;

5. Punitive damages under the common law and under Connecticut General Statutes 42-110a, *et seq.*;

6. Attorneys' Fees under the common law and under Connecticut General Statutes 42-110a, *et seq.;*

7. Treble Damages under Connecticut General Statutes § 52-564;

8. The imposition of a constructive trust;

9. An injunctive order of restitution; and

10. Any other appropriate legal or equitable relief the Court may order.

                    THE PLAINTIFF,
                    THE STANLEY WORKS ISRAEL LTD.,

                    Respectfully submitted,

Dated:  February 13, 2018          /s/ John L. Cordani, Jr._____
                    Peter M. Nolin
                    Federal Bar ct06223
                    John L. Cordani, Jr.
                    Federal Bar ct28833
                    Carmody Torrance Sandak & Hennessey, LLP
                    50 Leavenworth Street
                    Waterbury, Connecticut 06721
                    Tel:  203-573-1200
                    Fax:  203-575-2600
                    pnolin@carmodylaw.com
                    jlcordani@carmodylaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2018, a copy of the foregoing Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/  John L. Cordani, Jr.
John L. Cordani, Jr.