# **EXHIBIT C**

## AGREEMENT AND MUTUAL RELEASE

This Agreement and Mutual Release, (hereinafter "Agreement and Mutual Release") is entered into effective as of the date it has been fully executed by both Parties ("Effective Date") by and between 500 Group, Inc., a New York corporation with its principal place of business at 400 S. 4th Street, Las Vegas, Nevada 89101 ("500 Group") and The Stanley Works Israel Ltd., f/k/a ZAG Industries, Ltd., an Israeli limited liability company with its principal place of business at Rosh Ha'Ayin, Israel ("SWI") (500 Group and SWI are sometimes hereinafter collectively referred to as the "Parties").

WHEREAS, 500 Group and SWI are parties to a certain Product License Agreement dated May 14, 1997 (the "1997 License Agreement"), a certain Product License Agreement dated February 27, 2004 (the "2004 License Agreement") and a certain Letter Agreement dated January 10, 2007 (the "2007 Letter Agreement") (hereinafter sometimes collectively referred to as "the Agreements").

WHEREAS, various disputes have arisen between 500 Group and SWI under the Agreements regarding claims by 500 Group that royalties were not being paid to 500 Group on various accused Products (hereinafter "Products") covered by the Agreements.

WHEREAS, recent disputes have arisen between 500 Group and SWI under the 1997 License Agreement which have resulted in the filing of a Demand for Arbitration by 500 Group against SWI with the American Arbitration Association at Case No. 01-16-0001-1756 (the "Arbitration").

WHEREAS, 500 Group has asserted in the Arbitration that SWI has breached the 1997 License Agreement allegedly by: (a) failing to pay royalties due on Products



Plaintiff's
6/24/2020 JB
Hamid Firooznia
**Exhibit 1**

4819-3496-6085.v2

subject to the 1997 License Agreement; (b) failing to properly account for sales of Products subject to the 1997 License Agreement; (c) failing to properly mark the 500 Group copyright notice on the Products as required by the 1997 License Agreement; (d) failing to submit Products for quality control and approval by 500 Group as required by the 1997 License Agreement; and (e) misappropriation of 500 Group intellectual property and designs and theft of trade secrets by developing or having developed through subcontractors, various "knock off" products which are sold under various names and identified by different stock keeping unit ("SKU") numbers than the product SKUs reported to 500 Group under the 1997 License Agreement.

WHEREAS, as a consequence of the foregoing alleged breaches of the 1997 License Agreement, 500 Group has asserted causes of action in the Arbitration seeking damages and other relief for: (1) breach of contract in wrongfully terminating the 1997 License Agreement; (2) breach of contract in failing to pay royalties due; (3) breach of contract for failure to provide documentation for royalties paid; (4) breach of contract for failure to mark Products with the 500 Group copyright notice; (5) breach of contract for failure to submit Products to 500 Group for quality control and approval; (6) misappropriation of 500 Group's intellectual property and designs and theft of trade secrets; (7) declaratory judgment for future royalties; (8) declaratory judgment regarding exclusivity; (9) unjust enrichment; and (10) an accounting.

WHEREAS, in the Arbitration, SWI has denied all liability to 500 Group, has asserted affirmative defenses and has asserted counterclaims against 500 Group seeking: (1) a declaratory judgment of proper termination of the 1997 License Agreement for "Cause"; (2) breach of the 1997 License Agreement for failure to enforce patent rights; (3) breach of the implied covenant of good faith and fair dealing; (4) fraud

in the inducement; (5) a declaratory judgment of royalty obligations terminating upon expiration of the underlying intellectual property; and (6) a declaratory judgment limiting royalties to Products identified in the 1997 License Agreement.

WHEREAS, there is an existing dispute over whether SWI owes 500 Group for past due royalties and accrued interest under the Agreements.

WHEREAS, the Parties wish to settle and forever resolve all disputes and controversies which have previously arisen out of all of the Agreements and all disputes asserted in the Arbitration whether or not asserted by them as of the date of this Agreement and Mutual Release.

NOW, THEREFORE, in consideration of the payment of the Compensation Amount (set forth below) and the mutual promises and covenants contained herein, the adequacy and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties hereto agree as follows:

1. <u>Compensation Amount</u>. SWI agrees to pay the sum of Ten Million U.S. Dollars ($10,000,000) (the "Compensation Amount") to 500 Group within fourteen (14) business days of the Effective Date of this Agreement and Mutual Release. With regard to the Compensation Amount,

(i) Six Million U.S. Dollars ($6,000,000) constitutes payment for SWI's purchase of all patents (listed on Schedule 1) and patents rights owned by 500 Group pertaining to the Rolling Workshop ("RWS") and/or Products.

(ii) Four Million U.S. Dollars ($4,000,000) constitutes a fixed-fee payment for the future royalties (or any payments) due under the Agreements covering the next ten (10) years. SWI has no obligation for royalties or payments thereafter.

Upon receipt of the Compensation Amount by 500 Group, i) all business arrangements, contracts, and agreements which existed as of the Effective Date between 500 Group and/or Paolo Tiramani and SWI and any of its affiliates shall be deemed terminated and no other payments under the Agreements will be due from SWI to 500 Group whether it be for existing or future Products or otherwise, and ii) SWI shall be released from any past royalties, payments or interest due to 500 Group.

Payment of the Compensation Amount shall be in accordance with the following instructions:

    (a)    The sum of One Million U.S. Dollars ($1,000,000) to the following account of Eckert Seamans Cherin & Mellott, LLC:

PNC Bank Main Operating Account from within the U.S.
Please notify Barbara Moore (412-566-2062 or accountsreceivable@eckertseamans.com) with the client information and anticipated wire amount.

BANK:    PNC Bank
             225 Fifth Avenue
             Pittsburgh, PA 15222

ABA ROUTING #: ▮

BENEFICIARY:    Eckert Seamans Cherin & Mellott, LLC

BENEFICIARY ACCOUNT NUMBER: ▮

ADDITIONAL COMMENTS:    Please reference the ESCM invoice number ▮ ▮ that is being paid.

PNC Bank Main Operating Account from outside the U.S.
Please notify Barbara Moore (412-566-2062 or accountsreceivable@eckertseamans.com) with the client information and anticipated wire amount.

BANK:    PNC Bank
             225 Fifth Avenue
             Pittsburgh, PA 15222

SWIFT CODE: ▮

ABA ROUTING #: ▮▮▮

BENEFICIARY: Eckert Seamans Cherin & Mellott, LLC

BENEFICIARY ACCOUNT NUMBER: ▮▮▮

ADDITIONAL COMMENTS: Please reference the ESCM invoice number ▮▮▮ ▮▮▮ that is being paid.

and

(b) The sum of Nine Million U.S. Dollars ($9,000,000) to the account of 500 Group in accordance with wire instructions to be provided by 500 Group to SWI.

2. <u>Release by 500 Group</u>. 500 Group, on behalf of itself and all of its affiliates, subsidiaries, parent corporations, shareholders, members, former, current, and future employees, officers, servants, agents, representatives, successors and assigns does hereby remise, release, and discharge SWI, and all of its respective former, current, and future employees, officers, servants, agents, representatives, attorneys, shareholders, beneficiaries and their respective affiliates, parent corporations, subsidiaries, personal representatives, heirs, successors and assigns of and from all, and all manner of, actions, causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, costs, claims, and demands whatsoever, whether in law or in equity, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or non-accrued, in connection with, resulting from, or to result from any claims which 500 Group has made or could have made in the Arbitration, and/or those claims which have arisen under the 1997 License Agreement, the 2004 License Agreement and/or the 2007 Letter Agreement through the date of this Agreement and Mutual Release, which against SWI and all of its former, current, and future employees, officers, servants, agents, representatives, shareholders,

beneficiaries, parent corporations, affiliates, subsidiaries, personal representatives, heirs, successors, and assigns, and direct and indirect customers, 500 Group ever had or now has for or by reason of any cause, matter, or thing whatsoever, from the beginning of the world to the date of these presents.

3. <u>Release by SWI</u>.   SWI, on behalf of itself and all of its affiliates, subsidiaries, parent corporations, shareholders, former, current, and future employees, officers, servants, agents, representatives, personal representatives, successors and assigns, does hereby remise, release, and discharge 500 Group, and all of its former, current, and future employees, officers, servants, agents, representatives, attorneys, shareholders, beneficiaries and its affiliated companies, affiliates, parent corporations, subsidiaries, successors and assigns, of and from all, and all manner of, actions, causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, costs, claims, and demands whatsoever, whether in law or in equity, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or non-accrued, in connection with, resulting from, or to result from any claims which SWI has made or could have made in the Arbitration and/or those claims that have arisen under the 1997 License Agreement, the 2004 License Agreement and/or the 2007 Letter Agreement through the date of this Agreement and Mutual Release, which against 500 Group and all of its former, current, and future employees, officers, servants, agents, representatives, shareholders, beneficiaries, parent corporations, affiliates, subsidiaries, successors, and assigns and direct and indirect customers thereof, which SWI ever had or now has for or by reason of any cause, matter, or thing whatsoever, from the beginning of the world to the date of these presents.

4. <u>Dismissal of Claims and Counterclaims</u>. The Parties agree to take all necessary action to dismiss all claims and counterclaims asserted in the Arbitration with prejudice, with each Party to bear its own costs and attorney's fees incurred therein within ten (10) days after the Effective Date.

5. <u>Cancellation of the Agreements</u>. The Parties agree that the 1997 License Agreement, the 2004 License Agreement and the 2007 Letter Agreement shall be cancelled, terminated, null and void and of no further force or effect upon receipt of the Compensation Amount by 500 Group.

6. <u>Miscellaneous Provisions</u>.

(a) The Parties further agree that this Agreement and Mutual Release represents the entire agreement between the Parties and that there are no other agreements with regard to the settlement of the disputed claims. Any and all discussions, drafts, statements, representations, or agreements leading to this Agreement and Mutual Release are merged herein and superseded hereby. This Agreement and Mutual Release may not be modified except by a writing signed by both Parties hereto.

(b) The Parties further agree that this Agreement and Mutual Release shall, in all respects, be interpreted, enforced, and governed under the laws of the State of New York without regard to its conflicts of laws principles.

(c) The language of all parts of this Agreement and Mutual Release shall, in all cases, be construed as a whole according to its fair meaning and not strictly for or against either of the Parties. The Parties acknowledge that they have had an opportunity to have this Agreement and Mutual Release reviewed by counsel, who have approved it as to form and content.

7

(d)  The Parties agree that this Agreement and Mutual Release may be executed in counterparts, and at such time as both Parties have executed one copy, this Agreement and Mutual Release shall be deemed effective and binding on both Parties. Each Party shall be given one copy of the fully executed Agreement and Mutual Release.

*IN WITNESS WHEREOF*, the undersigned have executed this Agreement and Mutual Release as of the last date indicated below.

| 500 GROUP, INC. | THE STANLEY WORKS ISRAEL LTD. |
|---|---|
| By _____ *(signature)* | By _____ *(signature)* |
| PAOLO TIRAMANI <br> Paolo Tiramani <br> (Printed / Typed Name) | Michael A Bastove <br> (Printed / Typed Name) |
| Founder FOUNDER <br> (Printed / Typed Title) | Director <br> (Printed / Typed Title) |
| MARCH 31, 2017 <br> Date | March 28, 2017 <br> Date |

## SCHEDULE 1

Patents

1. U.S. Patent No. 6,176,559

2. U.S. Patent No. 6,347,847 (and Reexamination Certificate thereof)

3. U.S. Patent No. 6,601,930 (and Reexamination Certificate thereof)

4. Israel Patent No. 128303

5. Any and all foreign and/or domestic patents and/or applications that claim priority to or from the above listed patents (including any reissues, continuations, divisions and/or continuations-in-part) thereof.