# **EXHIBIT 2**

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

STANLEY WORKS ISRAEL, LTD, f/k/a  :
ZAG INDUSTRIES, LTD,               :
                                   :
         Plaintiff,                : CASE NO.:
                                   : 3:17-CV-01765-CSH
    v.                             :
                                   :
500 GROUP, INC., and PAOLO         :
TIRAMANI,                          :
                                   :
         Defendants.               :
_____


    DEPOSITION OF DEAN ALBANESI, taken in accordance with the Connecticut Practice Book at the law offices of Robinson & Cole, 1055 Washington Boulevard, Floor 10, Stamford, Connecticut, before Mercedes Marney-Sheldon, CT-LSR #530, a Registered Professional Reporter and Notary Public, in and, for the State of Connecticut on Thursday, January 23, 2020, at 10:05 a.m.

Page 11

1  work at Stanley, I get involved from an accounting
2  perspective in litigation.  So I generally have a
3  litigation file for every year that's out there
4  that I've been -- at least in my current role.
5       Q.    So help me understand how that works.
6  So if there is a dispute going on involving
7  Stanley, they may bring you in in order to assess
8  tax issues related to that his dispute; is that
9  fair?
10      A.    Not tax issues.  US GAAP.
11            So I'm a business unit controller, so I
12 focus more on the US GAAP side.  We have folks at
13 our corporate headquarters that focus on the tax
14 side.
15      Q.    So you're looking at it from an
16 accounting side as opposed to a tax side?
17      A.    You got it.  Yeah, what position, what
18 would this do to our balance sheet or our profit
19 and loss statement.
20      Q.    You said business unit controller, is
21 that your current title?
22      A.    It is, for Global Tools and Storage.
23      Q.    And who is your employer?
24      A.    Stanley Black & Decker.
25            (Clarification requested by the Court

```
 1            Reporter.)
 2   BY MR. JENSEN
 3       Q.    Do you have an understanding for the
 4   overall corporate structure of Stanley Black &
 5   Decker?
 6       A.    High level.  I don't have all the legal
 7   entities that are out there.
 8       Q.    Okay.  So when you say Stanley Black &
 9   Decker, what -- where in the overall structure is
10   that entity?  Is that the top line?
11       A.    Stanley Black & Deckers is the
12   corporation.  GTS is a piece of it.
13       Q.    And GTS is Global Tools and Storage?
14       A.    Global Tools and Storage, yes.
15       Q.    Where is your office?
16       A.    My office is in Towson, Maryland.
17             (Clarification requested by the Court
18         Reporter.)
19   BY MR. JENSEN
20       Q.    That's T-O-W-S-O-N?
21       A.    You got it.
22       Q.    How many employees are located in
23   Towson, Maryland, for Stanley Black & Decker?
24       A.    Roughly 1100's, 1,200.
25       Q.    How long have you been in your current
```

1          Decker, and I held the role I had, as well as
2          finance integration leader between Stanley and
3          Black & Decker for the tools group.
4                 Then became the hand tools and storage
5          finance director, which was a piece of GTS,
6          for about a year and a half.
7                 And then in summer of 2011, I was asked
8          to move to Maryland and be Global Tools and
9          Storage business unit controller -- GTS is
10         what we call it now.  It was called CDIY then.
11         So the name just modified a little bit over
12         time.  The position was the same.
13   BY MR. JENSEN:
14         Q.    Prior to going to Towson, Maryland, you
15   were located in Connecticut?
16         A.    Yeah.
17         Q.    Yes?
18         A.    Yes.
19         Q.    Okay.  You mentioned that you're a CPA.
20   Can you kind of broadly walk me through your
21   educational background?
22         A.    I can.
23                I went undergrad to Merrimack College
24   with a finance degree.
25                I worked for a bank for a year, State

1      A.     (Witness reviews document.)

2             So your question was, do I believe this
3   statement is accurate?

4      Q.     Yeah.  Let me just -- I'll ask it again
5   so the record is clear.

6      A.     Yeah, I just want to make sure after
7   reading it.

8      Q.     Sure.  So I read it out loud, but the
9   paragraph beginning with "Finally."

10            The paragraph in Mr. Morris's e-mail
11  from March 17, 2017, where he refers to Stanley
12  Black & Decker having separate groups and divisions
13  with their own P&Ls responsible for demonstrating
14  growth, do you agree that that is consistent with
15  your understanding of the corporate structure at
16  Stanley Black & Decker?

17     A.     Yes, we all have -- there's -- we all
18  have our own P&Ls that we have to manage too, that
19  filters into the entire company, so we're
20  responsible for our decision-making.

21     Q.     And Stanley Works Israel is a separate
22  corporate entity, correct?

23     A.     Separate corporate entity.  I'm not sure
24  how to answer that or what you're trying to get at
25  with it.  Maybe you can rephrase.

```
 1      Q.    Sure.
 2            Stanley Works Israel Limited is an
 3   Israeli corporation; is that correct?
 4      A.    It's a legal entity, yes.
 5      Q.    Legal entity, right.  I understand
 6   there's an affiliation with corporate Stanley Black
 7   & Decker; is that right?
 8            MR. DALEY:  Objection to form.
 9            THE WITNESS:  Well, it's owned by
10        Stanley Black & Decker.
11   BY MR. JENSEN
12      Q.    But it is a separate unit, correct, with
13   its own P&L?
14      A.    That's a hard one to answer.
15            It feeds into other P&Ls that are a part
16   of GTS.
17      Q.    Okay.  Where is the GTS -- where is GTS
18   primarily headquartered?
19      A.    Our global headquarters are Towson,
20   Maryland.
21      Q.    Okay.  And Stanley Works Israel feeds
22   into Global Tools and Storage?
23      A.    Yes, through -- not direct, but through
24   the hand tool and storage business.  It's complex.
25      Q.    Understood.
```

Page 64

1  500 Group engaged Ernst & Young directly; is that
2  correct?
3      A.   That's my understanding.
4      Q.   Okay.  And Ernst & Young is the same
5  firm that Stanley was seeking advice from at that
6  same time, correct?
7      A.   Well, we used them as our auditors, so
8  they supported both of us.
9      Q.   Understood.
10          And a mutual release was signed allowing
11 them to represent both?
12     A.   Without sharing information, correct.
13 Yes.
14     Q.   So what was the information that you
15 were asked to provide to Ernst & Young?
16     A.   Just a position paper on Stanley Black &
17 Decker's accounting of the transaction.
18     Q.   Okay.  And what was the sum and
19 substance of that position paper?
20     A.   It would have been right aligned with
21 the agreement that $6 million would have been
22 expensed, because it related to the patents, and
23 4 million of it would have been amortized over 10
24 years.
25     Q.   And the Israeli Tax Authority's ultimate

Page 65

1  position was, was that the portions that were
2  attributable to purchasing the patents, there was
3  no withholding, correct?
4       A.   That was my understanding.
5       Q.   All right.  And that's what paragraph 21
6  here in the amended complaint says, right?
7  0 percent of the patent rights payment?
8       A.   It does say that.
9       Q.   And so we discussed before the 6 million
10 for patent rights and 4 million for royalty
11 payments was a structure that was important to
12 Stanley Works Israel, correct?
13           MR. DALEY:  Objection to form.
14           THE WITNESS:  Well, it's what we agreed
15      to.
16 BY MR. JENSEN:
17      Q.   Right.
18      A.   We would have put in 10 million as -- as
19 royalties in the future versus 4, if we could
20 completely have gotten it done --
21      Q.   Because that provided added benefits to
22 Stanley's accounting position, correct?
23      A.   That's right.
24      Q.   Right.
25      A.   So...

Page 66

1      Q.   So Stanley pushed for as high a number
2  as possible to go towards royalties that 500 Group
3  would agree to, right?
4      A.   Yeah.  500 Group wanted us to put the
5  whole 10 million to patents, so it was a balanced
6  negotiation.
7      Q.   And ultimately, the amounts that went to
8  royalties were what was determined to create a
9  taxable event with respect to the Israeli Tax
10 Authority, correct?
11           MR. DALEY:  Objection to form.
12           THE WITNESS:  That's what it says here.
13 BY MR. JENSEN:
14     Q.   Okay.  The last sentence of that
15 paragraph 21 states, "500 Group agreed that Stanley
16 Israel was to retain $600,000 from the payment
17 total under the settlement agreement to fulfill 500
18 Group's tax obligations and its preapproval
19 arrangements with the Israeli Tax Authority.
20           Do you have any understanding as to what
21 form that agreement took?
22     A.   I have an understanding in terms of the
23 form, yes.
24     Q.   Okay.  What's that understanding?
25     A.   It would have been oral, as well as, I'm

1                C E R T I F I C A T E

2

3   STATE OF CONNECTICUT )

4                        ) ss.:

5   COUNTY OF FAIRFIELD  )

6

7        I, MERCEDES MARNEY-SHELDON, Court Reporter and

8   Notary Public within and for the state of Connecticut,

9   do hereby certify:

10       That DEAN ALBANESI, the witness whose deposition

11  is hereinbefore set forth, was duly sworn by me, and

12  that such deposition is a true record of the testimony

13  given by the witness.

14       I further certify that I am not related to any of

15  the parties to this action by blood or marriage, and

16  that I am in no way interested in the outcome of this

17  matter.

18       IN WITNESS WHEREOF, I have here unto set my hand

19  this 23rd day of January, 2020.

20

21
    _____
22  Mercedes Marney-Sheldon - Shorthand Reporter
    Notary Public - State of Connecticut
23  Account Number: 167303
    Date Appointed:  08/07/2014
24  Expiration Date:  08/31/2023

25